**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL RAVEN, | : | |
| LOYOLA ENERGY, LLC, and | : | |
| ELLICOTT, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 22-1600 |
| | : | |
| LARRY ELKUS, ESQ. d/b/a LAW OFFICE OF | : | |
| LAWRENCE M. ELKUS, P.C., | : | |
| LAW OFFICE OF LAWRENCE M. ELKUS, P.C., | : | |
| LANCASTER EXPLORATION AND | : | |
| DEVELOPMENT CO., LLC, | : | |
| DAVID T. BUELE, C.P.A. d/b/a APPALACHIAN | : | |
| BASIN CPA'S, INC., and | : | |
| APPALACHIAN BASIN CPA'S, INC. | : | |
| | : | |
| Defendants. | : | |

**ORDER**

**AND NOW**, this          day of                              , 2022, upon consideration

of the Motion to Dismiss filed by Defendants, Lawrence M. Elkus, Esquire and Law Office of

Lawrence M. Elkus, P.C., and any response filed thereto, it is hereby **ORDERED** that said Motion

is **GRANTED**. All claims against Lawrence M. Elkus, Esquire and Law Office of Lawrence M.

Elkus, P.C. are **DISMISSED**, with prejudice.

**BY THE COURT:**

_____
**KEARNEY, J.**

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL RAVEN, | : | |
| LOYOLA ENERGY, LLC, and | : | |
| ELLICOTT, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 22-1600 |
| | : | |
| LARRY ELKUS, ESQ. d/b/a LAW OFFICE OF | : | |
| LAWRENCE M. ELKUS, P.C., | : | |
| LAW OFFICE OF LAWRENCE M. ELKUS, P.C., | : | |
| LANCASTER EXPLORATION AND | : | |
| DEVELOPMENT CO., LLC, | : | |
| DAVID T. BUELE, C.P.A. d/b/a APPALACHIAN | : | |
| BASIN CPA'S, INC., and | : | |
| APPALACHIAN BASIN CPA'S, INC. | : | |
| | : | |
| Defendants. | : | |

**MOTION TO DISMISS OF DEFENDANTS, LAWRENCE M. ELKUS, ESQUIRE AND**
**LAW OFFICE OF LAWRENCE M. ELKUS, P.C.**

Defendants, Larry Elkus, Esq. d/b/a Law Office of Lawrence M. Elkus, P.C. and Law Office of Lawrence M. Elkus, P.C. (collectively, "Attorney Elkus"), by and through their counsel Kane, Pugh, Knoell, Troy & Kramer, LLP, hereby move this Honorable Court to enter an Order dismissing Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief may be granted.

In short, Plaintiffs have filed a professional lability action against Attorney Elkus, despite acknowledging in their Amended Complaint that Attorney Elkus *never represented them*. Instead, Plaintiffs acknowledge that, at all times relevant to their operative complaint, Attorney Elkus served as counsel to non-party (and former Defendant) Brenco Oil, Inc. ("Brenco"). As such, Plaintiffs cannot articulate a cause of action against Attorney Elkus for professional liability, or

1

under any other theory of liability. Furthermore, even a cursory review of the documents and pleadings referenced in Plaintiffs' operative complaint reveals that Plaintiffs' claims are frivolous and barred, both by a settlement agreement and by the doctrine of res judicata.

Plaintiff, Michael Raven ("Raven"), is a disgruntled former shareholder of Brenco. In 2017, Raven filed suit against Brenco in the Superior Court for Maricopa County, Arizona. Subsequently, Raven agreed to send all disputes between the parties to alternative dispute resolution in Arizona. Thereafter, Raven and Brenco, and their respective affiliates, executed a settlement agreement, which Plaintiffs incorporated by reference into their Amended Complaint. Significantly, the settlement agreement specifically provided that Raven and his affiliates released any and all claims that he potentially had against Brenco and its affiliates and professionals, including Attorney Elkus and his firm.[1] Now, through this litigation, Plaintiffs seek to relitigate issues and claims that were explicitly and broadly released by way of that settlement agreement. Plaintiffs further seek to relitigate issues and claims post-settlement that were raised with the Arizona arbitrator, and again on appeal of the Arizona arbitration award. On February 23, 2021, the Superior Court of Maricopa County, Arizona entered a final judgment, confirming the arbitration award and denying Raven's motion to vacate or modify the award.

Moreover, if those claims against Attorney Elkus were not specifically released by way of said agreement, the terms of the settlement agreement provide that any controversies arising under the terms of the release must be submitted to alternative dispute resolution in Arizona. Thus, the United States District Court for the Eastern District of Pennsylvania is not the appropriate venue for Plaintiffs' claims against Attorney Elkus, and Plaintiffs' claims should be dismissed.

---

[1] Attorney Elkus notes that Brenco and its shareholders were originally named as parties to Plaintiffs' initial complaint. Likely acknowledging the frivolity of bringing suit against parties that they had previously released, Plaintiffs dropped Brenco and related parties from their First Amended Complaint.

Finally, Plaintiffs have failed to articulate a viable cause of action against Attorney Elkus, whether sounding in professional negligence or breach of contract. The grounds for Attorney Elkus's motion to dismiss are set forth more fully in the accompanying brief that is being filed contemporaneously herewith.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

Date:   5/2/2022             BY:   /s/ Paul C. Troy
                                   PAUL C. TROY, ESQUIRE
                                   THOMAS J. ZIMMERMAN, ESQUIRE
                                   Attorney I.D. Nos. 60875 / 316288
                                   510 Swede Street
                                   Norristown, PA   19401-4886
                                   *Counsel for Defendants, Lawrence M. Elkus, Esq.*
                                   *and Law Office of Lawrence M. Elkus, P.C.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL RAVEN,<br>LOYOLA ENERGY, LLC, and<br>ELLICOTT, LLC,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>LARRY ELKUS, ESQ. d/b/a LAW OFFICE OF<br>LAWRENCE M. ELKUS, P.C.,<br>LAW OFFICE OF LAWRENCE M. ELKUS, P.C.,<br>LANCASTER EXPLORATION AND<br>DEVELOPMENT CO., LLC,<br>DAVID T. BUELE, C.P.A. d/b/a APPALACHIAN<br>BASIN CPA'S, INC., and<br>APPALACHIAN BASIN CPA'S, INC.,<br>　　　　　Defendants. | CIVIL ACTION NO. 22-1600 |

### MEMORANDUM OF LAW IN SUPPORT OF THE
### MOTION TO DISMISS OF DEFENDANTS, LAWRENCE M. ELKUS, ESQUIRE AND
### LAW OFFICE OF LAWRENCE M. ELKUS, P.C.

Defendants, Larry Elkus, Esq. d/b/a Law Office of Lawrence M. Elkus, P.C. and Law Office of Lawrence M. Elkus, P.C. (collectively, "Attorney Elkus"), by and through their counsel Kane, Pugh, Knoell, Troy & Kramer, LLP, respectfully move this Honorable Court to enter an Order dismissing Plaintiffs' claims against them pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief may be granted. Alternatively, should this Court find that Plaintiffs have presented cognizable claims against Attorney Elkus which are not barred by the terms of the general release that Plaintiffs executed, the Court should nevertheless dismiss the claims for both improper venue and lack of subject-matter jurisdiction.

1

## INTRODUCTION

Although Plaintiffs have filed a professional lability action against Attorney Elkus, they acknowledge in their Amended Complaint that Attorney Elkus never served as their counsel.

In the operative complaint, Plaintiffs clearly state that, at all times relevant, Attorney Elkus served as counsel solely to non-party Brenco Oil, Inc. ("Brenco"), an Arizona corporation to which Plaintiff, Michael Raven ("Raven"), was a former shareholder. By way of their original complaint, Plaintiffs attempt to relitigate claims against Brenco and others, which the parties exhaustively litigated, mediated and arbitrated for more than three years in Arizona. Recently, Plaintiffs amended their original complaint to release Brenco and others, but continued suit against five other defendants, including Attorney Elkus. With the instant action, Plaintiffs are attempting to evade prior agreements, a Final Arbitration Award, and the Final Judgment thereon. At best, Plaintiffs' lawsuit is nothing more than an egregious attempt at forum shopping, designed to harass the remaining defendants by raising previously released and resolved claims. As such, this litigation is vexatious and retaliatory.

In 2017, Raven, a Pennsylvania lawyer[1] and dissatisfied shareholder, filed a derivative shareholder suit against Brenco, which included claims against shareholder and officer Brenda Schreiner and her husband Michael Schreiner (as well as additional claims against unnamed individuals and companies) in Arizona. Brenco and Raven then agreed to resolve their disputes by way of a settlement agreement: the Interim Settlement and Standstill Agreement dated September 6, 2018 (the "Settlement Agreement"), to which Plaintiffs were signatories. The Settlement Agreement is incorporated into Plaintiffs' First Amended Complaint both by reference and as Exhibit A to their Complaint. *See also* Ex. 1, Settlement Agreement. Significantly, the Settlement

---

[1] Pennsylvania Attorney I.D. No. 204620.

Agreement specifically stated that Plaintiffs released Attorney Elkus and his firm from any and all claims related to the Arizona litigation, alongside Brenco. Plaintiffs now seek to relitigate those same issues and claims that were explicitly and broadly released by way of the Settlement Agreement. However, Plaintiffs cannot sidestep these releases. Moreover, because the Superior Court of Maricopa County, Arizona entered the arbitration award as a Final Judgment, the Court should dismiss Plaintiffs' claims as barred by the doctrine of res judicata.

Even assuming that Plaintiffs' claims against Attorney Elkus were not specifically released by way of the Settlement Agreement, by contract any controversies arising under the terms of the agreement must be submitted to alternative dispute resolution in the State of Arizona.

Accordingly, Plaintiffs claims against Attorney Elkus fail as a matter of law.

## I.    BACKGROUND

### A.    Procedural History

On June 21, 2021, Plaintiffs initiated the instant lawsuit in the Court of Common Pleas of Philadelphia County, Pennsylvania by way of a writ of summons. *See* Phila. C.C.P., Docket No. 210601332. On February 3, 2022, in response to a rule to show cause issued by the Court, Plaintiffs filed the initial complaint. On February 23, 2022, Attorney Elkus filed a Notice of Removal to the U.S. District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. *See* E.D. Pa. Civ. Action No. 22-692. Unbeknownst to Attorney Elkus, one since-dismissed defendant, Chief Exploration and Development ("Chief"), a Texas limited liability company, had one member that was a citizen of the Commonwealth of Pennsylvania. Thus, Chief's presence in the case destroyed diversity. On March 3, 2022, upon stipulation by all defendants, the Honorable Mark A. Kearney entered an Order remanding this matter for lack of jurisdiction.

On April 5, 2022, in response to preliminary objections filed by Brenco, Brenda Schreiner and Michael Schreiner, Plaintiffs filed their First Amended Complaint. The First Amended Complaint is the operative complaint. By way of filing the First Amended Complaint, Plaintiffs voluntarily dismissed several individuals and entities as parties, including Chief. Thus, while the case stated by the initial pleading was not removable, complete diversity now exists. Pursuant to 28 U.S.C. § 1446(b)(3), on April 25, 2022, Attorney Elkus filed a Notice of Removal. (Doc. 1).

### B.     Factual Background

Generally, the First Amended Complaint alleges that, from 2010 to 2017, Plaintiff Raven, was involved in certain oil, gas and mineral business with Brenco, a company that was originally owned by Brenda Schreiner and/or Michael Schreiner.[2] Prior to 2014 Raven and Schreiner and/or Brenco were co-venturers in oil and gas lease acquisitions.  In 2014, Raven contributed his interest in the co-venture of the oil, gas and mineral business into Brenco and became a 50% shareholder. Plaintiffs allege that, In 2013, Brenco and/or Schreiner underpaid Plaintiffs. Plaintiffs allege that Brenco and/or Schreiner did not distribute profits to Raven appropriately under their "Business Arrangement", hid profits from Raven, and made greater distributions to Schreiner and his wife than to Raven. *See* Ex. 2, First Am. Compl., ¶¶9-23. According to Plaintiffs, Raven's business disputes with Schreiner culminated in Schreiner closing Brenco's bank accounts and transferring funds in May of 2017—an effort designed, according to Raven, to allegedly "conceal [Schreiner's] malfeasance."[3] *Id.* at ¶24.

---

[2] Michael Schreiner is referred to hereafter as "Schreiner."

[3] Although not material to this motion to dismiss, Attorney Elkus disputes Plaintiffs' gross mischaracterizations of the record, and will attempt to provide some explanation where appropriate. In this instance, in May of 2017, a Texas group threatened, and would eventually file, litigation against Brenco (and others). As a result, Brenco substantially reduced all dividends due to the anticipated large legal fees that would occur with the litigation.

4

### i.    *Attorney Elkus's involvement with Brenco*

The First Amended Complaint states that Attorney Elkus became involved as Brenco's counsel in or around 2012, defending Brenco in various lawsuits up to and through 2017. *Id.* at ¶¶25-26. Notably, Plaintiffs acknowledge that Attorney Elkus was retained by Brenco, not any individual shareholder. *Id.* at ¶¶27-28.

It is also noted that Attorney Elkus was a manager and member of Defendant Lancaster Exploration and Development Company, LLC ("Lancaster"). In 2012, in the capacity as a manager of Lancaster, Elkus had discussions with both Schreiner and Raven regarding Lancaster and Schreiner/Raven's mutual interest in oil and gas properties in Pennsylvania.  On October 17, 2012, Lancaster and Brenco entered into an information sharing agreement—not a "joint venture," as mischaracterized by Plaintiffs. *Id.* at ¶¶29. *See* Ex. 3, Information Sharing Agreement.

Several years later, Attorney Elkus entered into a agreement to serve as legal counsel for Brenco. A review of the relevant representation agreement shows that Plaintiffs have misstated both the temporal scope of Attorney Elkus's professional duties, as well as their subject matter. Again, to correct the record, Brenco did not retain Attorney Elkus as legal counsel until 2017. On or about April 26, 2017, Schreiner, acting as authorized agent for Brenco, signed a legal representation agreement for Attorney Elkus to serve as Brenco's counsel in a commercial dispute involving (1) threatened litigation from a series of sales of oil, gas and mineral rights by Brenco and others (including Raven) to an investor group based out of Texas and (2) a possible malpractice action against an oil and gas title lawyer in Pennsylvania. *See* Ex. 4, Brenco Engagement Letter. That engagement letter provided that any disputes arising out of legal services provided by Attorney Elkus to Brenco shall be submitted to binding arbitration in Detroit, Michigan. *See* Ex. 4, ¶10. On or about July 16, 2017, Schreiner signed an amendment to Brenco's legal representation

5

agreement, in which the scope of Attorney Elkus's services was expanded to include a dispute with Raven, as a shareholder.[4] *See* Ex. 5, Amendment to Brenco Engagement Letter. The amendment further stated that Attorney Elkus was retained as counsel to Brenco only and would not serve as counsel to Schreiner or his wife, Brenda. *Id.* As the Court can see, Attorney Elkus served as counsel to Brenco only, starting in 2017.

Notwithstanding their own admissions that Attorney Elkus served as counsel to Brenco, not its individual shareholders,[5] Plaintiffs allege that Attorney Elkus, acting in concert with Schreiner, worked against Raven's interests. *See* Ex. 2, First Am. Compl., ¶¶29-35.

### ii. *The Arizona Litigation and Arbitration Proceedings*

Subsequently, on December 22, 2017, Raven initiated a lawsuit against Schreiner and Brenco in the Superior Court of Maricopa County, Arizona, Case No. CV2017-056814. On March 23, 2018, Raven filed an Amended Complaint. *See* Ex. 6, Arizona Compl. The Arizona Complaint is based on the same predicate factual allegations as Plaintiffs' claims in the instant matter. *See*, *generally*, Ex. 2, First Am. Compl.; *compare with* Ex. 6, Arizona Compl., ¶¶14-91.

Attorney Elkus—with co-counsel in Arizona—represented Brenco, first in the Arizona litigation, and then subsequently in alternative dispute resolution in Arizona. As Plaintiffs admit in the operative complaint, Raven agreed to arbitrate his claims against Schreiner and Brenco and, in September of 2018, Raven entered into the aforementioned Interim Settlement and Standstill Agreement (the "Settlement Agreement"). In the Settlement Agreement, Raven agreed, *inter alia*, to arbitrate all unreleased claims with Kevin T. Ahern, Esq. (the "Arizona Arbitrator"). *See* Ex. 2,

---

[4] Both the original legal representation agreement and the amendment were produced to Raven during the Arizona arbitration.

[5] Attorney Elkus certainly did not serve as Plaintiffs' counsel in Raven's derivative action against Brenco. *See* Section I(B)(ii), *infra*. Indeed, a review of the relevant pleadings, which Plaintiffs incorporate by reference into their First Amended Complaint, shows that Raven retained his own counsel to represent Plaintiffs' interests in that lawsuit.

First Am. Compl., ¶38; *see also* Ex. 1, Settlement Agreement. Through the Settlement Agreement, Raven, together with his wholly owned businesses, Loyola Energy, LLC and Ellicott, Inc. ("Loyola" and "Ellicott," respectively), released all of their claims against Brenco and Schreiner and others, except for four specific topics, which were specifically reserved for resolution exclusively through arbitration proceedings in Arizona: (a) the distributions to the Schreiners and Raven, (b) propriety of legal invoices paid by Brenco to the law firm of Brann, Williams, Caldwell & Blaney, (c) Brenco's oil, gas and mineral rights, and (d) the ability of Brenco's accountant to amend a Brenco K-1 of shareholder Raven to one of his affiliates, Loyola.

Importantly, Attorney Elkus and his firm were specifically included as releasees in the Settlement Agreement. *See* Exhibit 1, Settlement Agreement, ¶12(c). Plaintiffs acknowledge that the Settlement Agreement included a broad release of any and all claims against all releasees "from the beginning of time through and including the Effective Date" of the Settlement Agreement, *i.e.* September 6, 2018. *See* Ex. 2, First Am. Compl., ¶39(b). The only claims Plaintiffs did not release in the Settlement Agreement were the aforementioned narrow subset of claims involving Brenco and the Schreiners, which Plaintiffs agreed to resolve exclusively through mediation and, if not settled at mediation, through final and binding arbitration before the Arizona Arbitrator. In complete disregard of the above-referenced releases, Plaintiffs now seek to improperly re-litigate the released claims, even while acknowledging that Raven provided Attorney Elkus with a full and complete release to those claims.

### iii.    *Post-Settlement Activities in Arizona*

After entering into the Settlement Agreement, Raven and Brenco arbitrated the remaining four claims. The arbitration was conducted over two days. On August 28, 2020, the Arizona Arbitrator issued a Final Award, which incorporated by reference the Settlement Agreement,

several Orders from the Arizona Arbitrator, and a Share Redemption Agreement.[6] *See* Ex. 7, Final Award of Arbitrator (with accompanying exhibits). All of the foregoing documents, which Plaintiffs incorporate by reference into their First Amended Complaint, contained exhaustive allegations by Raven (and his counsel), including assertions of misconduct during the arbitration on the part of Brenco and its retained professionals (including Attorney Elkus). *Id.* Once again, Plaintiffs regurgitate those same allegations in their First Amended Complaint.

On November 12, 2020, Raven filed a Motion to Vacate Arbitration Award with the Superior Court of Arizona, Maricopa County, making the same unsubstantiated claims of fraud and bias on the part of the Arizona Arbitrator that he makes in the First Amended Complaint in this action. *See* Ex. 8, Motion to Vacate. On January 19, 2021, after extensive briefing, the Superior Court of Maricopa County, Arizona entered an order denying Raven's motion and awarding attorneys' fees to Brenco. *See* Exhibit 9, Arizona Order (Jan. 19, 2021). On January 26, 2021, the Court declined to reconsider its ruling and affirmed its denial of Raven's motion. *See* Ex. 10, Arizona Order (Jan. 26, 2021).

On February 2, 2021, Raven and Brenco entered into a letter agreement, in which Raven waived Plaintiffs' rights to appeal. *See* Ex. 11, Letter Agreement (stating Raven's intent to provide an "irrevocable waiver" of his rights to appeal the August 28, 2020 Arbitration Award). On February 19, 2021, Raven executed a Declaration, which describes in detail Plaintiffs' waivers of claims. *See* Ex. 12, Raven Declaration. On February 23, 2021, the Superior Court of Arizona entered a Final Judgment Confirming the Final Arbitration Award and Denying Motion to Vacate or Modify Final Arbitration Award.  *See* Ex. 12, Arizona Final Judgment.

---

[6] Pursuant to the March 17, 2020 Share Redemption Agreement, Raven redeemed all of his shares and interest in Brenco, for the sum of $2,250,000. *See* Ex. 7-7, Share Redemption Agreement. Plaintiffs have not rescinded the Settlement Agreement or the Redemption Agreement. Likewise, Plaintiffs have not sought to return the $2,250,000 they were paid, or the other substantial benefits they received under both Agreements.

Despite the Settlement Agreement, Arbitration Award, Maricopa County Superior Court Orders and Raven's Declaration of February 19, 2021, Plaintiffs have filed and continued litigation on two lawsuits in Pennsylvania: (1) a 2018 case in Sullivan County, and (2) the matter currently before the Court.

### iv.    Related Sullivan County litigation

On August 29, 2018, approximately one week before entering into the Settlement Agreement, Raven filed a separate action against Attorney Elkus in the Court of Common Pleas for Sullivan County, Pennsylvania, No. 2018-cv-191. *See* Ex. 14, Sullivan County Writ of Summons. On April 6, 2021, Plaintiffs reinstated the Writ. On May 4, 2021, after almost three years of inactivity, the Honorable Russell D. Shurtleff conducted a status conference on the Sullivan County matter, after which he entered an Order finding that the parties had entered into a settlement agreement which provided that all future disputes must be brought in Arizona. *See* Ex. 15, Sullivan County Order.

On June 3, 2021, Raven appealed the Order dismissing the Sullivan County matter. On June 30, 2021, Judge Shurtleff issued an Opinion restating that the dismissal was based on the parties' settlement agreement. *See* Ex. 16, Sullivan County Opinion. On April 5, 2022, the Superior Court of Pennsylvania entered an Order affirming the trial court's dismissal of Raven's claim against Attorney Elkus. *See* Ex. 17, Superior Court Opinion, Docket No. 750 MDA 2021. This Court should adopt the reasoning of the Sullivan County Court of Common Pleas.

## II.    ARGUMENT

### A.    Legal Standard

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all

reasonable inferences in favor of the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *abrogated on other grounds*, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 434-35 (3d Cir. 2000). However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *See In re Nice Sys., Ltd. Sec. Litig.,* 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.*

When deciding a Rule 12(b)(6) motion, a court may consider documents "that a defendant attaches as an exhibit to a motion to dismiss," *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), if they are "undisputedly authentic" and the plaintiff's claims are based on those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("a court may consider documents attached to a motion to dismiss . . . if they are referenced in the plaintiff's complaint and are central to his claim.") (internal citations omitted). "That holding extends to settlement material because [a litigant] 'need not provide admissible proof at th[e] [motion-to-

10

dismiss] stage.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019) (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (holding that this rule "prevents a plaintiff from evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit."); *see also Cuchara v. Gai-Tronics, Corp.*, Civ. Action No. 03-06573, 2004 U.S. Dist. LEXIS 11334 (E.D. Pa. April 8, 2004) (Van Antwerpen, J.) (considering agreement and general release on 12(b)(6) motion where plaintiff's allegations were based on release and it was attached as an exhibit to both supporting memoranda), *aff'd*, 129 F. App'x 728 (3d Cir. 2005).

### B.    Legal Argument

As this Court can see, this is not the first time that Plaintiffs have tried to litigate these issues. Here, their claims fail for several reasons. First, at no time did Attorney Elkus owe any professional duty to Plaintiffs. His sole client was Brenco, a non-party to this action which, at all times relevant, was in direct conflict with Plaintiffs. Second, all of Plaintiffs' purported claims against Attorney Elkus were resolved through litigation and arbitration in Arizona. Notably, Plaintiffs raised allegations of misconduct by Brenco's retained professionals during the arbitration, including Attorney Elkus. Accordingly, Plaintiffs' release is broad and unambiguous, showing a clear intent in releasing Attorney Elkus and his firm. Finally, Plaintiffs are contractually obligated to submit to an Arizona Arbitrator any and all alleged future breaches of any obligation set forth in the Settlement Agreement. *See* Ex. 1, Settlement Agreement, ¶10.

### i.    *Plaintiffs have released their claims against Attorney Elkus.*

Plaintiffs' claims are legally insufficient because they were released under the express terms of the Settlement Agreement. The Settlement Agreement provided that Plaintiffs released and discharged all releasees from:

> Any and all claims, causes of action, damages, personal or economic injuries, rights or liabilities whatsoever, whether known or unknown on the date of the Settlement, including  attorney's fees, costs and litigation expenses, whether grounded in contract, tort, equity or regulatory violation, which are based on or arise out of the allegations and causes of action asserted or which could have been asserted against each other in the Arizona Action, the Pennsylvania Action, or based upon the filing and/or dismissal of either Action. It is expressly understood that the members of each group are releasing the members of the other group, of and from any and all claims, causes of action, damages, personal or economic injuries, rights or liabilities whatsoever, whether known or unknown from the beginning of time through and including the Effective Date.

Ex. 1, Settlement Agreement, ¶12. Attorney Elkus and his firm are specifically included as releasees. *Id.* at ¶12(c).

There can be no doubt regarding the intended breadth of the release. The Settlement Agreement explicitly provided that:

> the releases exchanged herein are intended to be and should be construed as the **broadest conceivable general release of all claims, liabilities and causes of action**, whether known or unknown, of any kind of nature whatsoever, whether in contract or in tort, arising out of any act, event, omission or other matter predating the effective date of the Arbitration Agreement, whether or not based upon or arising out of the subject matters of the Arizona Action, the Pennsylvania Action, the Banik Action or otherwise.

*Id.* at ¶12(g) (emphasis added). A signed release of claims is binding upon parties to an agreement unless executed and procured by "fraud, duress, or other circumstances sufficient to invalidate the agreement." *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 (3d Cir. 2003); *see also*

*Bowersox Truck Sales, Inc. v. Harco Nat. Ins. Co.*, 209 F.3d 273, 279 (3d Cir. 2000) (quoting *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 892 (3d Cir. 1975)).

Plaintiffs and their Arizona counsel actively participated in the Arizona litigation, Arizona mediation and Arizona arbitration, including the negotiating and drafting of the Settlement Agreement and the mutual broad releases including therein. Plaintiffs confirmed in writing that Raven consulted with legal counsel prior to execution. *See* Ex. 1, Settlement Agreement, ¶22. Raven's counsel also reviewed and signed the Settlement Agreement, approving it as to form. *Id.* at ¶13. Accordingly, basic principles of settlement and release operate to bar Plaintiffs' claims in this action against Attorney Elkus. These are the same claims brought by Plaintiffs in the Arizona Complaint, which Plaintiffs explicitly released as against Attorney Elkus. Plaintiffs are attempting to relitigate claims that they mediated, settled and released more than three years ago. As such, Plaintiffs' claims should be dismissed.

### ii.    *Plaintiffs' claims must be arbitrated or otherwise litigated in Arizona.*

Moreover, the Settlement Agreement provides that the appropriate forum for any claims arising from that agreement is arbitration in Maricopa County, Arizona.

Because Plaintiffs are bound by a valid and enforceable arbitration agreement, this Court is not the appropriate forum to hear Plaintiffs' grievances. *Jones v. Judge Tech. Servs. Inc.*, Civ. Action No. 11-6910, 2014 U.S. Dist. LEXIS 109551, at *21-22 (E.D. Pa. Aug. 7, 2014) (Goldberg, J.) (dismissing claims, pursuant to Rule 12(b)(1), of those plaintiffs who were subject to an arbitration agreement); *Allstate Ins. Co. v. Masco Corp.*, Civ. Action No. 06-3183, 2008 U.S. Dist. LEXIS 4255, at *6 (E.D. Pa. Jan. 22, 2008) (Stengel, J.) ("Where parties have agreed to submit claims to arbitration under a valid and enforceable arbitration clause or agreement, dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper."); *Bro Tech Corp. v. European*

*Bank for Reconstruction & Dev.*, Civ. Action No. 00-2160, 2000 U.S. Dist. LEXIS 17049, at *24 (E.D. Pa. Nov. 29, 2000) (Green, S.J.) ("Because all of the Plaintiffs' claims are controlled by the arbitration clauses, this Court does not have subject matter jurisdiction over this dispute.").

Plaintiff's claims against Attorney Elkus were previously released and/or fully and finally adjudicated through the Arizona arbitration and litigation. *See* Section II(B)(iii), *infra*. However, even if that were not the case, any such claims were explicitly and exclusively reserved for resolution only by arbitration in Arizona. Paragraph 10 of the Settlement Agreement specifically provided that the alternative dispute resolution mechanism agreed to by the parties was established as the "exclusive method and means" of resolving "any controversy and/or dispute between the parties. Ex. 1, Settlement Agreement, ¶10. That reservation included all issues relating to the parties' intentions in establishing the Agreement and dispute resolution process, as well as "the form and content of the Agreement," "the rights and obligations of the parties under this Agreement," the "enforcement or remedy for any future breach of the Agreement," and "the final resolution of the Open Issues" described in the Agreement. *Id.*

The Settlement Agreement explicitly provided that, except as specifically permitted therein, "all other remedies for resolving disputes are waived, including the right to trial by jury and right to bring a civil action in the Maricopa County Superior Court for declaratory relief, damages, injunctive and other equitable relief. *Id.* Accordingly, to the extent that Plaintiffs wish to address any of the allegations which were previously raised in the Arizona Complaint and/or Arizona Arbitration, alternative dispute resolution in Arizona is the appropriate forum.[7]

---

[7] Alternatively, if Plaintiffs wish to raise a dispute as to the legal representation that Attorney Elkus provided to Brenco, that dispute must be resolved through binding arbitration in Detroit, Michigan. *See* fn. 2, *supra*. Either way, there is no appropriate forum in Pennsylvania—Plaintiffs must bring their complaints to an appropriate arbitrator in either Arizona or Michigan.

      ***iii.***     ***Attorney Elkus never served as counsel for Plaintiffs and, therefore, never owed any professional duty towards Plaintiffs.***

Finally, and to the extent that Plaintiffs intend to argue that their professional liability claims against Attorney Elkus were not contemplated by the parties to the Settlement Agreement, those claims still fail as a matter of law.

Under Pennsylvania law, in order to establish a claim legal malpractice claim, the following three elements must be met: (1) the employment of the attorney or other basis of duty inuring to a plaintiff's benefit; (2) the failure of the attorney to exercise ordinary skill and knowledge which would normally be exercised by members of the profession under the same or similar circumstances; and (3) the attorney's negligence was the proximate cause of damage to the plaintiff. *Composition Roofers Local 30/30B v. Katz*, 581 A.2d 607, 609 (Pa. Super. 1990); *McPeake v. Cannon Esquire, P.C.*, 553 A.2d 439, 441 (Pa. Super. 1989); *Reynolds v. Stambaugh*, 2015 Pa. Super. Unpub. LEXIS 171, 2015 WL 674293, at *4 (Pa. Super. Feb. 5, 2015).

Plaintiffs admit, and there can be no dispute, that Attorney Elkus served as counsel for Brenco only, not Raven or any other Plaintiffs. Raven is a Pennsylvania lawyer himself, who retained counsel to represent the Plaintiffs in the litigation, mediation, and arbitration proceedings in Arizona. At all times he was adverse to Brenco, Attorney Elkus's sole client in the proceedings. At no time did Attorney Elkus serve as Plaintiffs' counsel, and, as such, at no time did he owe any professional duty to Plaintiffs before, during or after the Arizona Arbitration. To the contrary, at all times relevant to Plaintiffs' operative complaint, Attorney Elkus served as counsel to Plaintiffs' adversary, Brenco. Moreover, Plaintiffs have not articulated any facts to show how Attorney Elkus's actions or inactions were the cause of harm to Plaintiffs, or that he did not exercise the skill and knowledge expected of attorneys under the same or similar circumstances.

Similarly, Plaintiffs cannot articulate any breach of contract claim against Attorney Elkus. The only contract pleaded in the operative complaint is a contract for legal services. *See* Ex. 2, First Am. Compl., ¶130, yet Plaintiffs plead their remaining counts under contract theories. "Where a plaintiff pursues a legal malpractice claim under a breach of contract theory, he or she must prove: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Nuyannes v. Thompson*, No. 11-2029, 2012 U.S. Dist. LEXIS 42088, 2012 WL 1033912, at *11 (E.D. Pa. Mar. 27, 2012) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Here, Plaintiffs rely upon the same operative allegations to support both their negligence and breach of contract claims. These facts do not plausibly show the existence of a contract between Attorney Elkus and any Plaintiff, nor any professional negligence or breach of a duty imposed by any such contract. Accordingly, Plaintiffs have not articulated any viable claims against Attorney Elkus.

## III. CONCLUSION

Based on the foregoing, Plaintiffs have not pleaded any legally sufficient claims against Attorney Elkus. Accordingly, Defendants, Lawrence M. Elkus, Esquire and Law Office of Lawrence M. Elkus, P.C. respectfully request that this Honorable Court dismiss Plaintiffs' claims against them, with prejudice, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

Date:   5/2/2022          BY:    /s/ Paul C. Troy
                                 PAUL C. TROY, ESQUIRE
                                 THOMAS J. ZIMMERMAN, ESQUIRE
                                 Attorney I.D. Nos. 60875 / 316288
                                 510 Swede Street
                                 Norristown, PA   19401-4886
                                 *Counsel for Defendants, Lawrence M. Elkus, Esq.*
                                 *and Law Office of Lawrence M. Elkus, P.C.*

4883-7757-3918, v. 1

## CERTIFICATE OF SERVICE

I, Paul C. Troy, do hereby certify that on May 2, 2022, I electronically filed the foregoing **Motion to Dismiss** with the Clerk of Court using the Court's electronic filing system ("ECF"), which will send notification of such filing to all counsel of record. The foregoing document is also available for viewing and/or downloading from ECF. Said document was also sent via electronic mail and/or U.S. Mail to the following counsel, as indicated:

VIA EMAIL
Matthew B. Weisberg, Esq.
David Berlin, Esq.
**Weisberg Law**
7 South Morton Ave.
Morton, PA 19070
mweisberg@weisberglawoffices.com
dberlin@weisberglawoffices.com
*Counsel for Plaintiffs*

VIA EMAIL
Gary Schafkopf, Esq.
**Schafkopf Law, LLC**
11 Bala Ave.
Bala Cynwyd, PA 19004
gschafkopf@gmail.com
*Counsel for Plaintiffs*

VIA EMAIL
Seth L. Laver, Esq.
**Goldberg Segalla**
1700 Market St., Ste. 1418
Philadelphia, PA 19103
slaver@goldbergsegalla.com
*Counsel for David A. Buele, C.P.A. d/b/a Appalachian Basin CPA's, Inc. and Appalachian Basin CPA's, Inc.*

VIA EMAIL
Kevin J. McKeon, Esq.
**Hawke, McKeon & Sniscak LLP**
100 N. 10th St.
Harrisburg, PA 17101
kjmckeon@hmslegal.com
*Counsel for Lancaster Exploration and Development Co., LLC*

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

BY:  /s/ Paul C. Troy
        PAUL C. TROY, ESQUIRE
        THOMAS J. ZIMMERMAN, ESQUIRE

1